IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHANE ELLIE BOYDSTON                                                                    PLAINTIFF

v.                               Civil No. 2:23-cv-02102-PKH-MEF

CAPTAIN DUMAS,
LT. McINTYRE,
CPL. ABERNATHY,
SHERIFF HOBE RUNION,
DEPUTY DUMAS
(All of Sebastian County Detention Center)                                              DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P. K. Holmes, III, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is the Defendants' Motion for Summary Judgment.[1] (ECF Nos. 22-24).

I. **BACKGROUND**

Plaintiff filed his Complaint on August 1, 2023. (ECF No. 1). That same day, the Court entered an Order directing Plaintiff to submit a completed *in forma* pauperis ("IFP") application and an Amended Complaint by August 22, 2023. (ECF No. 2). Plaintiff submitted both on August 11, 2023. (ECF Nos. 4, 5). On August 14, 2023, Plaintiff submitted a Notice of Address Change indicating he had been released from the Sebastian County Detention Center ("SCDC"). (ECF

---

[1] The Motion is labelled and docketed as one for partial summary judgment, but it asks for the dismissal of the entire case. The Court will infer that the document label was the result of clerical error.

1

No. 8). On August 15, 2023, the Court entered an Order directing Plaintiff to resubmit his IFP application to reflect his free world financial status. (ECF No. 9). When Plaintiff failed to do so, the Court entered a Show Cause Order directing Plaintiff to show cause for his failure. (ECF No. 10). Plaintiff filed a second Notice of Address change on September 20, 2023. (ECF No. 11). In it, he stated he had been transferred to an Arkansas Division of Correction Intake Unit, and he had given his home address as the address to be used until he knew where he would be housed in the ADC. (*Id*.). He also submitted a completed IFP application, and IFP status was granted on September 21, 2023. (ECF No. 13).

Plaintiff's Amended Complaint centers on his incarceration in SCDC. (ECF No. 4). For his first claim, Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated in "May 2023."[2] (*Id*. at 4). Plaintiff alleges he was injured due to overcrowding at SCDC. (*Id*. at 4-5). Specifically, he states the overcrowding caused him to fall and hit his ribs on the toilet. (*Id*. at 5). He alleges a lack of showers, sanitation, and inmate violence, but it is unclear from his allegations if he is contending that it was overcrowding or his injury which led to these issues. (*Id*.). He alleges he suffered from bruised ribs and difficulty in breathing from his fall onto the toilet. (*Id*. at 4-5). He states he requested medical attention and was ignored by the nurse and told "I be Okay" by Defendants. (*Id*. at 4). Plaintiff alleges, "I was physically unable to write on the kiosk," presumably due to his injury. (*Id*. at 4-5). Plaintiff alleges Defendants Capt. Dumas, Lt. McIntyre, Dep. Dumas, and Cpl. Abernathy did not support his medical needs as an inmate. (*Id*. at 5). As a result, he was in "dire distress, in pain, and internal suffering." (*Id*.). He alleges Defendant Sheriff Runion is accountable for the other officer's actions. (*Id*.). Plaintiff made several changes to the form, but he appears to proceed against these

---

[2] Plaintiff fails to provide a more specific date for any of his claims.

Defendants in both their official and individual capacity. (*Id*. at 4). For his official capacity claim Plaintiff alleges:

> "The Defendants listed have the custom and widespread policy of not following the jail policy. Instead, they practice acting with malicious intent for personal pleasure and no regard for inmate safety or medical needs. Supervisors are aware of this and not only allow it, but actively participate in acting with malicious intent. This widespread practice and custom caused the violation of my rights." (*Id*. at 5).

For his second claim, Plaintiff alleges Defendants Dep. Dumas and Cpl. Abernathy denied him medical care in "May 2023." (ECF No. 4 at 6). Plaintiff elaborates on his injury in this claim, stating he tripped over another inmate, hitting his ribs on the toilet "with the full weight of his body." (*Id*.). He further alleges there were six inmates in a two-person cell. (*Id*.). Plaintiff alleges he asked Dep. Dumas for medical attention and was refused. (*Id*.). He asked again the next morning when his breathing was worse, and Dep. Dumas told him not to ask again. (*Id*.). Plaintiff alleges he tried to tell the Nurse and Cpl. Abernathy at pill call that same day, but Cpl. Abernathy told him to be quiet, followed him back to his cell while "making threats towards me along the way." Plaintiff alleges he developed a large bruise, had difficulty breathing, and later developed pain in his lower back and sciatic area. (*Id*.). He alleges he is still experiencing pain and discomfort. (*Id*.). Plaintiff checked the section of the form indicating he proceeds against Defendants Dep. Dumas and Cpl. Abernathy in their individual capacity alone. (*Id*. at 7). However, in the section where he is to describe the official capacity portion of the claim, he states that Dep. Dumas and the rest of the guards act with malicious intent and no consequences and make inmate safety and medical care their lowest priority. (*Id*.).

For his third claim, Plaintiff alleges Defendants Lt. McIntyre and Capt. Dumas subjected him to unconstitutional conditions of confinement in "May 2023." (ECF No. 4 at 7). He alleges that, as the two highest ranking officers, they "failed to emphasize ethics and the importance of

3

inmate safety, especially the need to provide medical care." (*Id*. at 8). He further alleges the overcrowding of the facility led to dangerous conditions of confinement, including multiple and "mostly undocumented" inmate on inmate attacks and injuries. (*Id*.). Plaintiff proceeds against Defendants for this claim in both their official and individual capacities. (*Id*.). For his official capacity claim, Plaintiff alleges the "highest ranking individuals in supervisor positions knowingly allow malicious acts by all staff in their jail." (*Id*.). He further alleges they have "developed and allowed the custom and widespread practice of causing inmate rights violated," and have "made no attempt to correct these actions or implement a policy that safeguards inmate safety and constitutional rights." (*Id*. at 9).

For his fourth claim, Plaintiff alleges Defendant Sheriff Runion violated his rights in "May 2023." (ECF No. 4 at 10). Specifically, he alleges Defendant Runion has "allowed supervisors and staff to operate the jail at low standards." (*Id*.). He alleges this directly led to his injury, denial of medical care, and pain and suffering. (*Id*.). Plaintiff proceeds against Defendant Runion in his official and individual capacities. (*Id*. at 11). To support his official capacity claim, Plaintiff alleges the Sheriff "developed a blanket policy of allowing staff to act with malicious intent and complete disregard for inmate safety. He has known about incidents like mine and helped the jail staff stay out of trouble while ruining the word and reputation of the inmates." (*Id*.).

Attached to Plaintiff's Amended Complaint are written statements by two other inmates. Neither is notarized or sworn under penalty of perjury. The first is by Eugene King and dated August 6, 2023. (ECF No. 4 at 14). He states he was in the cell with Plaintiff in May 2023; it was a two-man cell housing six inmates; and he was present when Plaintiff tripped over another cellmate and landed on the toilet. (*Id*.). He states Plaintiff made a "noise in pain" and held his

side after hitting the toilet, showing issues with his breathing.³ (*Id*.). Plaintiff lifted his shirt, and he could first see a red area, and later a "large blue and black bruise." (*Id*.). He states he has witnessed Plaintiff continuing to have unidentified problems. (*Id*.). He states Plaintiff "tried to report his injury to Deputy Dumas, but he said no and told him if he did report it he would face consequences even though he could not get out of bed or take a shower." (*Id*.). He further states the other inmates helped Plaintiff for a few weeks as it was hard for him to "get around" in the crowded cell. (*Id*.). Finally, he states Plaintiff "tried to tell a nurse and Abernathy about being hurt, but Abernathy told him to go back to his cell and do not say anything." (*Id*.).

The second statement is by Kennedy Sheppard and is also dated August 6, 2023. (ECF No. 4 at 15). He repeats the same details as to the accident and injury. (*Id*.). He states:

> "he tried to talk to CO. Dumas but was told not to report it. We tried to talk to nurse and CO Abernathy about it also but CO Abernathy said no and go back to cell and not say anything. CO Dumas threatened us, it would be bad if we said something." (*Id*.).

Plaintiff seeks compensatory and punitive damages. (*Id*. at 9). He seeks two million dollars for pain, suffering, lost wages, and future medical expenses. (*Id*.).

Defendants filed their Motion for Summary Judgment on December 22, 2023. (ECF Nos. 22-24). They argue summary judgment in their favor is appropriate because Plaintiff failed to exhaust his administrative remedies concerning his claims prior to filing this lawsuit. (ECF No. 22 at 1). Specifically, they argue that the SCDC grievance policy requires inmates to file a grievance within 10 days of the incident grieved. (ECF No. 23 at 5). They note that this grievance policy is detailed in the inmate handbook. Plaintiff received a copy of this handbook upon intake, and it is also available on the inmate kiosk and electronic tablets. (*Id*.; 24-1 at 2). Defendants

---

³ The actual phrase written was "breathing irracically." The Court will infer this to mean some sort of difficulty with breathing. (*Id*. at 14).

provide an affidavit by Sergeant Eddie Smith, the Director of Inmate Management for SCDC, who states that he examined the grievances filed by Plaintiff from April 2023 through August 2023. (ECF No. 24-1). Plaintiff did not file a grievance concerning an injury from falling on a toilet until July 12, 2023. (*Id*.). They argue he did not file a grievance concerning overcrowding in SCDC until June 30, 2023, and this grievance was not appealed. (ECF No. 23 at 6). Finally, they argue he did not file a grievance concerning the denial of medical care for his injury until July 12, 2023, and that grievance did not allege any wrongdoing by any of the named Defendants. (*Id*. at 6-7). Although Plaintiff filed what was labelled an appeal, he simply stated the reason of the appeal as, "Thank you. This is from an incident a few months back as you should recall." (*Id*. at 7). He did not complete an appeal for this grievance. (*Id*.).

Defendants address Plaintiff's allegation that he was physically unable to use the kiosk to file a grievance by pointing out that he used the kiosk in April, May, June, and July to make other unrelated requests. (ECF No. 23 at 6). In his affidavit, Sergeant Eddie Smith elaborates that Plaintiff did not file any grievances in May, but he did utilize the kiosk to make other requests, such as a request for a religious book on May 22, 2023. (ECF No. 24-1 at 2).

Plaintiff filed his Response and Statement of Disputed Facts on January 23, 2024. (ECF Nos. 27, 28). In his Statement of Disputed Facts, Plaintiff disputes paragraphs 4, 5 and 6 of Defendants' Statement of Undisputed Facts. In paragraph 4, Defendants reference both his initial Complaint and his Amended Complaint to point out a disparity in his allegations. (ECF No. 24 at 1-2). They note that in his initial Complaint he stated he was punched by another inmate, causing him to fall and hit his ribs on the toilet. (*Id*. at 2). They note that in his Amended Complaint, Plaintiff does not allege that he was punched, instead stating he tripped. (*Id*.). Plaintiff argues that the Amended Complaint supersedes the initial Complaint. (ECF No. 28 at 1).

6

In paragraphs 5 and 6, Defendants lay out the SCDC grievance policy, including the requirement that inmates must file a grievance within 10 days of an incident, and must file an appeal of a grievance decision within three days. (ECF No. 24 at 2). Although Plaintiff disputes these paragraphs, he does not address the grievance policy statements; instead, he states that he received "threats of substantial retaliation" which made the grievance process unavailable to him. (ECF No. 28 at 1). He further states he "was afraid to file a grievance for several weeks, for fear of retaliation by faculty." (*Id*.). Plaintiff does not provide any detail as to the content or context of the alleged threats.

Plaintiff does not dispute anything else in Defendants' Statement of Undisputed Facts. He does not dispute the dates or content of the grievances filed as described by Defendants. (ECF No. 28 at 1-2). He does not dispute that he utilized the kiosk in May 2023 to make requests. (*Id*.).

In his Response, Plaintiff merely repeats the allegations of his Amended Complaint. (ECF No. 27). He does not dispute that he failed to exhaust his administrative remedies, but he argues that "threats of substantial retaliation made the administrative process unavailable." (*Id*. at 2). He argues "he received threats of physical injury and other forms of retaliation by the jail and prison officials if the injury was reported or grievance process utilized." (*Id*. at 1). He further argues:

> "The Amended Complaint and witness statements show that the threats from Dep. Dumas and Cpl. Abernathy were serious enough to deter the Plaintiff from filing a grievance or reporting the injury. The witness statements show that any reasonable inmate of ordinary firmness and fortitude would have been deterred from filing a grievance or reporting the injury sustained by Plaintiff due to the serious nature of the threats. (*Id*. at 2).

Again, Plaintiff does not provide any detail as to the content or context of the alleged threats.

Defendants filed their Reply on January 30, 2024. (ECF No. 29). They argue that Plaintiff's allegation that he failed to file a grievance out of fear of retaliation must fail for two reasons: first, he has provided no proof of the alleged threats of retaliation; and second, he was not

7

actually deterred from filing grievances concerning the incident as he ultimately filed five grievances related to his claims. (*Id*. at 2).[4]

## II.   LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

---

[4] They further note that Plaintiff's allegations in his Response are contradicted by the facts stated in his Original Complaint. (ECF No. 29 at 3). They argue he indicated on the complaint form that he filed a grievance regarding his claims. They further note that, when asked "if there are any reasons why you did not file a grievance, please state them here," the Plaintiff indicated that this question was "not applicable" to him. (*Id*.). "Generally, an amended complaint supersedes an original complaint and renders the original complaint without legal effect." *Schlafly v. Eagle Forum*, 970 F.3d 924, 933 (8th Cir. 2020). Thus, this argument will not be considered further.

8

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199, 219 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff does not dispute that he failed to timely file and exhaust any grievances concerning the claims in his Amended Complaint. Instead, he argues that the grievance process was unavailable to him for two reasons: (1) he was physically unable to use the kiosk after he was injured, and (2) Defendants Dep. Dumas and Cpl. Abernathy threatened him if he filed any grievances concerning the incident. Both of his assertions, however, are contradicted by the summary judgment record such that no reasonable jury could believe them.

Plaintiff alleges in his Amended Complaint that he was physically unable to use the kiosk to submit grievances after his injury. Plaintiff provides no more specific date than just "May 2023" for his claims. Defendants, however, have provided objective evidence in the form of an affidavit, together with Plaintiff's kiosk entries, that Plaintiff was physically able to access and use the kiosk on to make either requests or grievances in April, May, June, July, and August 2023. Further, Plaintiff does not dispute Defendants' Statement of Fact that he used the inmate kiosk in May 2023 to make requests.

Plaintiff next argues that he was "substantially threatened" with retaliation by Defendants Dep. Dumas and Cpl. Abernathy if he filed a grievance or otherwise reported the incident. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, a Plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason."

10

*Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990) (same). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id.*; *See also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994) (when retaliatory conduct is involved, there is no independent injury requirement). "Yet, there are some injuries so de minimis that they do not rise to the level of constitutional violation. 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.'" *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "The ordinary-firmness test is ... designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago*, 707 F.3d at 992 (citing *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Further, the courts have recognized that prison officials must have broad administrative authority. *Id*. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable). *See also Turner v. Mull*, 784 F.3d 485 (8th Cir. 2015) (mere timing of events alone does not establish the requisite causal link); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (Speculative and conclusory allegations cannot support a retaliation claim).

Verbal threats may be sufficiently adverse to meet the chilling requirement, particularly if they are contextually supported threats of death or serious harm. Speculative and conclusory, or *de minimis* allegations, however, cannot support a retaliation claim. *See e.g. Santiago*, 707 F.3d at 991 ("threats of death, issued by a correctional officer tasked with guarding a prisoner's segregated cell, would chill a prisoner of ordinary firmness from engaging in the prison grievance process"); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (guard pointing a gun at inmate, cocking it, and threatening him with "instant death" immediately after inmate had testified against another guard sufficiently adverse); *but see Rustan v. Rasmussen*, 208 F.3d 218 (8th Cir. 2000) (unpublished) (allegations that Defendants harassed and verbally threatened him in retaliation for a grievance did not form the basis of a cognizable § 1983 claim); *Evenstad v. Herberg*, 994 F.Supp. 2d 995, 1001 (D. Minn. 2015) (Alleged statement that "we'll be ramping things up" not actionable. "Without a more specific reference to [inmate] or what he might have coming, without a history of abuse or a pattern of threats, and unaccompanied by any menacing gesture, [the correctional officer's] statement simply is not sufficiently threatening to chill a person of ordinary firmness from continuing a protected activity."); *see also Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (unpublished) ("verbal threats and [a] few gestures of racial harassment" are not sufficiently adverse to support a retaliation claim); *Riley v. Coutu*, 172 F.R.D. 228, 235 (E.D. Mich. 1997) ("Certain means of 'retaliation' may be so *de minimis* as not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response.").

Here, Plaintiff makes only vague and *de minimis* allegations regarding the threats. These include that "he received threats of physical injury and other forms of retaliation by the jail and prison officials if the injury was reported or grievance process utilized," that Defendants Dep.

Dumas and Cpl. Abernathy "made substantial threats," and that any inmate would have been deterred from filing a grievance due to the "serious nature of the threats." (ECF No. 27 at 1-2). Plaintiff does not, however, provide any detail as to the content or context of these alleged threats. He does not describe exactly what was threatened; he does not describe when and how the statements were made; he does not describe where they were made; and he does not describe any accompanying physical gestures. Plaintiff attached two documents from other inmates to his Amended Complaint which also state that threats were made. These were not notarized or sworn under penalty of perjury. They also fail to provide any detail as to the content or context of the threats. Instead, they simply state Plaintiff was told "he would face consequences," and that "it would be bad if we said something." (ECF No. 4 at 14-15). All these statements, either from Plaintiff or the other inmates, are vague and *de minimis* statements which cannot support a claim for retaliation. Finally, Plaintiff was not deterred from filing grievances about the alleged incident. He simply did so later than the 10-day timeframe required by the SCDC grievance policy, and therefore, he could not administratively exhaust any of his grievances.

Thus, Plaintiff's arguments that the SCDC process was unavailable to him are contradicted by the summary judgement record such that no reasonable jury could believe him. He failed to exhaust his administrative remedies for his claims, and Defendants are entitled to summary judgment as a matter of law.

## IV.     CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 22) be GRANTED, and Plaintiff's Amended Complaint (ECF No. 4) be DISMISSED WITHOUT PREJUDICE.[5]

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Referral Status: This case should not remain referred as the case has been recommended for dismissal in this Report and Recommendation.

DATED this 10th day of July 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

---

[5] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice.  *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (*per curiam*).